650 So.2d 1259 (1995)
Deborah Johnson & Gregory PHILLIPS, Individually and on Behalf of Their Minor Child, Arielle G. Phillips
v.
WINN DIXIE STORES, INC., ABC Corporation, XYZ Insurance Company, and John Doe.
No. 94-CA-0354.
Court of Appeal of Louisiana, Fourth Circuit.
February 23, 1995.
*1260 Charles J. Imbornone, New Orleans, for plaintiff.
Paul M. Lavelle, Joseph B. Landry, Mary E. Brennan, Guste, Barnett & Shushan, New Orleans, for defendant.
Before ARMSTRONG, PLOTKIN and LANDRIEU, JJ.
ARMSTRONG, Judge.
This is an appeal by the defendant from a verdict for the plaintiffs in a supermarket personal injury case. The plaintiffs, Deborah Phillips and Gregory Phillips, sued as the parents of their minor child Arielle Phillips (whom they call "Jennie"). The defendant is Winn Dixie Louisiana, Inc. The plaintiffs alleged that Jennie was injured when a shopping cart in which she was seated overturned and that the shopping cart overturned because of a defective wheel. The jury found Winn Dixie liable and the damages to be $91,365. On appeal, Winn Dixie raises issues as to liability, quantum of damages and procedural matters. We find no reversible error and affirm.
Deborah Phillips went shopping at Winn Dixie accompanied by Jennie; her other daughter, Nikesha; her sister, Antoinette Gardner; and her sister's two children, Byron and Thomas (Thomas is called "Tee" by his family). At that time, Jennie was four years old and Tee was ten years old.
Winn Dixie provided shopping carts in a rack for the use of its customers. Deborah Phillips took one from the end of the rack to use for the shopping trip. She testified that the cart was "shaky as if the wheels were wobbly but this was normal" in her use of shopping carts. Tee put his younger cousin, Jennie, in the shopping cart. Jennie was seated in the child seat, at the back of the cart, with her legs through the holes located there.
The family went into the store. Inside the store, Tee pushed the cart with Jennie in it. The shopping cart overturned, falling to the side, with Jennie in the child seat, and Jennie suffered a badly fractured left femur. Tee and Jennie were sixteen and ten years old, respectively, at the time of trial. They testified that, at the time the cart overturned, Tee was pushing the cart in a normal manner, that he was not pushing it fast and that he did not bump into anything.
We previously have held, in a case in which a shopping cart overturned with a child in it, that there is a "duty on the part of any self-service store that elects to supply carts with seats for small children to supply carts that are reasonably safe for the children in the *1261 expected use of the carts." Alongi v. F.W. Woolworth Co., 405 So.2d 1120, 1121 (La. App. 4th Cir.1981). We also held that, because a cart that may have been reasonably safe when manufactured may become unreasonably dangerous after being damaged: "The self-service store's duty to supply carts that are reasonably safe must therefore oblige the store both to procure carts that are properly designed and manufactured and to maintain the carts in a reasonably safe condition thereafter (or not offer unstable carts to customers for use)." Id. We will review the liability issue with the Alongi rule in mind.
The plaintiffs' theory is that the shopping cart overturned because it had a wobbly or shaky wheel. Winn Dixie argues that it should not have been found liable because the plaintiffs did not prove that the shopping cart had a wobbly or shaky wheel and because they did not prove that such a wobbly or shaky wheel caused the cart to overturn. This issue is one of fact, to be determined by the jury, and we may not reverse on this factual issue unless the jury's determination was "clearly wrong" or resulted from "manifest error." Rossell v. ESCO, 549 So.2d 840 (La.1989).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluation and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. Esco, 549 So.2d 840 (La. 1989); Arceneaux v. Dominque, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
This court has recognized that "[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." Canter v. Koehring Co., 283 So.2d 716 (La.1973). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id.

Stobart v. State, Through DOTD, 617 So.2d 880, 882-83 (La.1993).
As to whether the plaintiffs proved that the shopping cart had a wobbly or shaky wheel, we already have referred to the testimony of Deborah Phillips that the cart was "shaky as if the wheels were wobbly." Additionally, Tee testified that one of the wheels of the shopping cart was "wobbly" and "loose." Lastly, Nikesha Phillips testified that she saw the shopping cart "shake" although *1262 she did not see the wheel. Winn Dixie was able to rebut this testimony only with the testimony of the store manager, Julius Dupre, that he had a general practice of removing damaged shopping carts from the store.
As to whether the wobbly or shaky wheel caused the shopping cart to overturn, the plaintiffs presented expert testimony of a mechanical engineer, Frederick Brown, Ph. D., that a wobbly or shaky wheel on a shopping cart is dangerous precisely because it makes the cart far more likely to overturn. Also, Dr. Brown testified that, with a child in the child seat of the cart, even sitting properly, the center of gravity of the cart is raised and this aggravates the danger of the cart overturning because of a wobbly or shaky wheel. Dr. Brown explained that a wobbly or shaky wheel will cause the shopping cart to have a lateral side-to-side motion which causes instability.
Furthermore, Winn Dixie's store manager, Julius Dupre, who is very familiar with Winn Dixie's shopping carts, admitted that a cart with wobbly or shaky wheels is unsafe. In fact, he specifically admitted that a shopping cart with a wobbly or shaky wheel is more likely to turn over.
To all this testimony must be added the lack of any explanation, other than a wobbly or shaky wheel, for the shopping cart having overturned. Tee and Jennie testified that, at the time the cart overturned, Jennie was properly seated and the cart was being pushed in a normal manner. The jury, as the finder of fact, could find this testimony to be credible.
In sum, we do not believe that the jury was clearly wrong or committed manifest error in deciding that the shopping cart had a wobbly or shaky wheel which caused the cart to overturn.
Next, Winn Dixie argues that the general damages awarded were excessive. The total damages awarded were $91,365.00, of which $18,000.00 was for medical expenses, so the general damages awarded were $73,365.00. We may not disturb the jury's award of general damages unless we conclude that the jury abused its much discretion in determining the amount of general damages.
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).
Our jurisprudence has consistently held that in the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion, Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1977). And, "[i]t is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient," Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions. Arceneaux v. Dominque, 365 So.2d 1330 (la.1978). Before an appellate court can disturb the *1263 quantum of an award, the record must clearly reveal that the jury abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may we an appellate court conclude that the award is inadequate. See Reck v. Stevens, supra; Cariere v. State Farm Insurance Co., 467 So.2d 867 (La.App.2d Cir.1985).
Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993).
Jennie suffered a serious fracture of her femur, the thigh bone running between the hip and the knee, when the shopping cart overturned. The record reflects the testimony of her family that Jennie was in excruciating pain. They took her to a hospital emergency room and she was still in terrible pain at that time.
At the hospital, surgery was necessary to insert a metal pin in Jennie's femur. She then was placed in traction for three and a half weeks. After that, there was further surgery to remove the pin, and she was placed in a body cast for six weeks more. This body cast extended from midchest to the foot of one leg and to the knee of the other leg.
After the body cast was removed, Jennie's activities were restricted for a number of months by her doctor's orders because of weakness in her leg. She could not go out and play for some time. Later, she could not engage in activities such as riding a bicycle or swinging. She was not able to return to school until March or April (the accident had been the previous December) and, when she did return to school, she was restricted by her doctor from participating in physical education. Her doctor testified that, altogether, Jennie was "laid up" for about six months.
Both of Jennie's parents testified that her injured leg continues to appear "lazy" and that this is particularly so when she moves quickly. Jennie is left with one leg a half inch shorter than the other although her doctor does not believe that this will cause her any difficulty.
Under the Supreme Court's Youn and Theriot standard for appellate review of general damages awards, we do not believe there is any reversible error in the award of general damages. The jury did not abuse its much discretion in determining the amount of the general damages.
Next, Winn Dixie argues that, during jury selection, the plaintiff's counsel made improper use of peremptory challenges to strike members of the jury pool based on their race. See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). However, we repeatedly have held that when a party in a civil case wishes to seek appellate court review of an Edmonson/Batson issue, it must do so by an application for supervisory writs and may not do so by an appeal after the trial. Cooke v. Allstate Ins. Co., No. 93-CA-1057, 635 So.2d 1330, 1333 (La.App. 4th Cir. 4/14/94); writ denied, 94-1257 (La. 9/2/94), ___ So.2d ___; White v. Touro Infirmary, No. 93-CA-1617, (La.App. 4th Cir. 2/11/94), 633 So.2d 755, 760; Holmes v. Great Atlantic and Pacific Tea Co., 622 So.2d 748, 760 (La.App. 4th Cir.), writ denied, 629 So.2d 1178 (La.1993). Therefore, we will not consider the merits of this issue.
Lastly, Winn Dixie points out that, on the jury verdict form, the jury allocated the fault at 65% to Winn Dixie, 20% to Tee and 15% to Deborah Phillips. Winn Dixie complains that the trial court cast Winn Dixie in judgment for all of the damages. However, we note that, on the jury verdict form, the jury specifically found that the fault of Tee and the fault of Deborah Phillips were each not a cause of Jennie's injury. Winn Dixie does not challenge these jury findings as to causation and does not otherwise address this point. Of course, fault that is not a cause of an injury does not result in liability and, thus, in the present case, cannot affect *1264 the allocation of liability. See Generally, e.g., Hebert v. Taco Bell Corp., 613 So.2d 729, 732 (La.App. 4th Cir.1993); Lewis v. Calice, 602 So.2d 1149, 1152 (La.App. 4th Cir.), writ denied, 608 So.2d 175 (La.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1816, 123 L.Ed.2d 446 (1993). The trial court entered judgment properly under the jury verdict.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
PLOTKIN, J., concurs.